IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL WINANS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| COX AUTOMOTIVE, INC. | : | NO. 22-3826 |

## MEMORANDUM

**Padova, J.**                                                                                                                                                     **April 17, 2023**

      Plaintiff Michael Winans brings this action against Defendant Cox Automotive, Inc., his former employer, alleging that Defendant's COVID-19 vaccine mandate violated his rights under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Pennsylvania Human Relations Act (the "PHRA"), the Americans with Disabilities Act (the "ADA"), and the Nuremberg Code. Defendant has filed a Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). We held oral argument on Defendant's Motion on April 10, 2023. For the following reasons, the Motion is granted.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

      The Complaint alleges the following facts. On August 2, 2021, Defendant announced a company-wide COVID-19 vaccine mandate for its employees whereby all employees were required to receive the vaccination by October 18, 2021 or risk termination. Shortly after Defendant announced the mandate, Plaintiff, who was then employed by Defendant as an implementation specialist, requested an exemption from the mandate with human resources on personal and religious grounds. Human resources did not respond to Plaintiff's request. In mid-September 2021, however, Defendant announced that employees could formally apply for an exemption from the vaccine mandate by either (1) requesting a medical exemption with a note from a physician, or (2) requesting a religious exemption with a note from a religious figure at the

employee's religious institution. Defendant stated that it would not entertain exemption requests based on personal beliefs.

Plaintiff refused to comply with the vaccine mandate because he believes that (1) the vaccine is ineffective at preventing the transmission of COVID-19 (Compl. at 6 ¶ 36), (2) the vaccine would offer him and those around him little benefit because he "may have had natural immunity" (id. at 11 ¶ 52), (3) the vaccine would "subject him to an elevated risk of adverse side effects, including death" (id. at 11 ¶ 52), (4) the vaccine trials "were riddled with massive fraud, falsified data, and negligent and intentional error" (id. at 11 ¶ 1), and (5) the vaccine was developed and produced with the use of fetal cell lines derived from aborted fetuses, which violates his religious beliefs (id. at 14 ¶¶ 15-16). Plaintiff, however, did not apply for either a medical exemption or a religious exemption from the mandate because (1) he had no basis to request a medical exemption, and (2) he could not formally apply for a religious exemption because he is not a member of a religious institution and therefore could not obtain a note from a religious figure at such an institution. Plaintiff attempted to speak with his managers about his concerns with the vaccine mandate, and his willingness to take a penalty on his health care benefits, but he did not speak with them. Rather, on September 20, 2021, Plaintiff submitted an ethics complaint to Defendant's ethics hotline regarding the vaccine mandate. Three days later, the ethics hotline dismissed his complaint.

Plaintiff's managers criticized him when they learned that he had refused to comply with the mandate and had failed to apply for either a medical or religious exemption. On October 20, 2021, Defendant terminated Plaintiff from his position, effective October 29, 2021. Following his termination, Plaintiff filed an employment discrimination complaint with the Equal Employment

Opportunity Commission (the "EEOC"). On June 28, 2022, the EEOC issued Plaintiff a right-to-sue letter.

The Complaint contains four Counts. Count I and Count II assert claims for religious discrimination, pursuant to Title VII and the PHRA, respectively, alleging that Plaintiff's objections to the COVID-19 vaccine are protected religious beliefs and Defendant terminated him based on those beliefs. Count III asserts a claim for disability discrimination, pursuant to the ADA, on the grounds that Defendant perceived Plaintiff's unvaccinated status as a disability and terminated him based on that perceived disability. Count IV asserts a claim for a violation of the Nuremberg Code, in which Plaintiff appears to allege that Defendant attempted to coerce him to involuntarily receive the COVID-19 vaccine. Defendant moves to dismiss all of Plaintiff's claims for relief pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.   LEGAL STANDARD

When deciding a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Alpizar-Fallas v. Favero, 908 F.3d 910, 914 (3d Cir. 2018) (quoting Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010)). "We accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." Shorter v. United States, 12 F.4th 366, 371 (3d Cir. 2021) (citing Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011)). However, we "are not bound to accept as true a legal conclusion couched as a factual allegation." Wood v. Moss, 572 U.S. 744, 755 n.5 (2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," which "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it

rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (first quoting Fed. R. Civ. P. 8(a)(2); then quoting Conley v. Gibson, 355 U.S. 41, 47 (1957) (second alteration in original)). The complaint must allege "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'" Warren Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). In the end, we will grant a motion to dismiss brought pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "to raise a right to relief above the speculative level." Geness v. Admin. Off. of Pa. Cts., 974 F.3d 263, 269 (3d Cir. 2020) (quoting Twombly, 550 U.S. at 555).

### III. DISCUSSION

#### A. Religious Discrimination

Defendant moves to dismiss Count I and Count II of the Complaint on the grounds that Plaintiff has failed to state a cognizable claim for religious discrimination under either Title VII or the PHRA. "Both parties [appear to] agree that the PHRA and Title VII claims should be analyzed under the same legal standard . . . ." Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d 315, 318-19 (3d Cir. 2008) (citing Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567 (3d Cir. 2002)). "Under Title VII, it is unlawful for an employer to 'discharge . . . or otherwise to discriminate against any individual with respect to h[is] compensation, terms, conditions or privileges of employment, because of . . . religion.'" Id. at 319 (first and third alteration in original) (quoting Shelton v. Univ. of Med. & Dentistry of N.J., 223 F.3d 220, 224 n.4 (3d Cir. 2000)). "In addition, under 42 U.S.C. § 2000e(j), an employer must make reasonable accommodations for its

employees' religious beliefs and practices unless doing so would create an 'undue hardship' for the employer." Id. (citing Shelton, 223 F.3d at 224).

In Counts I and II, Plaintiff asserts that Defendant has violated Title VII and the PHRA by (1) failing to accommodate his religious objections to the COVID-19 vaccine mandate, and (2) terminating his employment either based on, or in retaliation for, his religious objections to the vaccine. Defendant argues that Plaintiff has failed to plead sufficient facts to state a claim for religious discrimination under any theory of liability because he has not sufficiently alleged that his objections to the COVID-19 vaccine are sincerely held *religious* beliefs. Title VII protects against discrimination based on beliefs, but only where those beliefs are sincerely held and religious in nature. Fallon v. Mercy Cath. Med. Ctr. of Se. Pa., 200 F. Supp. 3d 553, 563 (E.D. Pa. 2016) ("[B]eliefs are not protected merely because they are strongly held. Rather, religion typically concerns ultimate ideas about life, purpose, and death. Social, political, or economic philosophies, as well as mere personal preferences, are not religious beliefs protected by Title VII." (quotations omitted)), aff'd, 877 F.3d 487 (3d Cir. 2017). Thus, in order to state a claim for religious discrimination under any theory of liability, Plaintiff must allege sufficient facts to show that his opposition to the COVID-19 vaccine arises from a sincerely held religious belief. See, e.g., Blackwell v. Lehigh Valley Health Network, Civ. A. No. 22-3360, 2023 WL 362392, at *9 n.8 (E.D. Pa. Jan. 23, 2023) (concluding that the plaintiff had failed to state a claim for religious discrimination based on a failure to accommodate, disparate treatment, or retaliation, because the complaint failed "to plead that her . . . termination was due to a sincerely held *religious* belief" (citations omitted)). Defendant argues that Plaintiff has failed to make this showing.

"[F]ew tasks that confront a court require more circumspection than that of determining whether a particular set of ideas constitutes a religion . . . ." Fallon v. Mercy Cath. Med. Ctr. of

5

Se. Pa., 877 F.3d 487, 490 (3d Cir. 2017) (second alteration in original) (quoting Africa v. Pennsylvania, 662 F.2d 1025, 1031 (3d Cir. 1981)). "This task is particularly difficult when we have to determine whether a nontraditional faith requires the protections of . . . Title VII." Id. The United States Supreme Court has explained "that no court should inquire into the validity or plausibility of [a litigant's] beliefs." Id. (citing United States v. Seeger, 380 U.S. 163, 185 (1965); Burwell v. Hobby Lobby Stores, Inc., 573 U.S. 682, 725 (2014)). Rather, the task of a court at the motion to dismiss stage is to decide whether the facts alleged by the plaintiff support the reasonable inference that his beliefs are sincerely held and "in [the believer's] own scheme of things, religious.'" Id. at 490-91 (alteration in original) (quoting Seeger, 380 U.S. at 185) (citing Hobby Lobby Stores, Inc., 573 U.S. at 725).

In Welsh v. United States, 398 U.S. 333 (1970), the Supreme Court "made clear that belief in God or divine beings [is] not necessary" to a showing of religion. Fallon, 877 F.3d at 491 (citing Welsh, 398 U.S. at 340). "[N]ontheistic beliefs [can] also be religious within the meaning of [Title VII] as long as they 'occupy in the life of that individual a place parallel to that filled by . . . God in traditionally religious persons.'" Id. (quoting Welsh, 398 U.S. at 340 (internal quotations omitted)). Based on this Supreme Court precedent, the United States Court of Appeals for the Third Circuit has defined religion as (1) "address[ing] fundamental and ultimate questions having to do with deep and imponderable matters;" (2) "consist[ing] of a belief-system" that is "comprehensive in nature . . . as opposed to an isolated teaching;" and (3) often marked "by the presence of certain formal and external signs." Id. (quoting Africa, 662 F.2d at 1032).

In Fallon, the Third Circuit, conducting a plenary review of the district court's Rule 12(b)(6) dismissal of the plaintiff's complaint, applied the Africa definition of religion to determine whether the plaintiff's allegations supported a reasonable inference that he had a

6

sincerely held *religious* objection to his employer's influenza vaccine mandate. Id. at 489 n.5, 491-92. There, the plaintiff alleged that he strongly believed "the flu vaccine may do more harm than good" and he attributed that belief to the Buddhist teaching that one should not harm his own body. Id. at 492 (quotation omitted). He also alleged that "if he yielded to coercion and consented to [his employer's] mandatory [vaccine] policy, he would violate his conscience as to what is right and what is wrong." Id. Based on those allegations, the Third Circuit acknowledged that the plaintiff "held a sincere opposition to vaccination that conflicted with" his employer's vaccination requirement, but it could not reasonably infer that his beliefs were religious in nature. Id. at 490, 492.

Specifically, the Court noted that the plaintiff's reliance on an isolated moral teaching— "[d]o not harm your own body"—could not show "a comprehensive system of beliefs about fundamental or ultimate matters," pursuant to the first and second factors of the Africa test. Id. at 492 (quotation omitted) (citing Africa, 662 F.2d at 1032). In addition, pursuant to the third Africa factor, the Court noted that the plaintiff's beliefs were "not manifested in formal and external signs . . . associated with . . . traditional religions.'" Id. (quoting Malnak v. Yogi, 592 F.2d 197, 209 (3d Cir. 1979) (Adams, J., concurring)). Accordingly, the Court found that the plaintiff's allegations failed to satisfy the Africa test and it concluded that the plaintiff's "concern that the flu vaccine may do more harm than good" was "a medical belief, [and] not a religious one," for purposes of Title VII liability. Id. at 492; see also Brown v. Children's Hosp. of Phila., 794 F. App'x 226, 227-28 (3d Cir. 2020) (affirming the district court's dismissal of plaintiff's second amended complaint because her alleged opposition to the flu vaccine, which she based on the fact "that the vaccine was unnecessary for her because she scrupulously washed her hands," was medical rather than religious in nature (quoting Fallon, 877 F.3d at 492)); Finkbeiner v. Geisinger Clinic, Civ. A.

7

No. 21-1903, 2022 WL 3702004, at *4 (M.D. Pa. Aug. 26, 2022) (dismissing the plaintiff's third amended complaint because she failed to allege sufficient facts to show that her anti-vaccination stance, which she based on the isolated moral teaching that she has a "God given right to make [her] own choices," was religious in nature (quotations omitted)).

Here, the Complaint primarily details Plaintiff's purely scientific, personal, and medical objections to the vaccine, including his belief that the vaccine is ineffective and his concerns with its potential side effects. The Complaint also alleges that Plaintiff "holds sincere concerns surrounding" the use of fetal cell lines from aborted fetuses in the production and development of the vaccine. (Compl. at 14 ¶¶ 15-16.) It does not, however, allege that Plaintiff's concern with the use of fetal cell lines arises out of any comprehensive religion—formal or informal—that drives the way he thinks about "deep and imponderable matters." Fallon, 877 F.3d at 491 (quoting Africa, 662 F.2d at 1032). The Complaint does not even identify *why* Plaintiff objects to the use of fetal cell lines in the development of the COVID-19 vaccine; it merely asserts that fetal cell lines were, in fact, used by vaccine developers. Moreover, Plaintiff does not link his "sincere concerns" with the use of fetal cell lines to any "formal and external signs" of religion. (Compl. at 14 ¶ 15); Fallon, 877 F.3d at 491 (quoting Africa, 662 F.2d at 1032).

While we accept as true that Plaintiff has concerns with the COVID-19 vaccine, we cannot reasonably infer, based on the facts alleged in the Complaint, that his concerns are religious in nature. Fallon, 877 F.3d at 492. Plaintiff has failed to allege facts that allow for the reasonable inference that his concerns (1) "address fundamental and ultimate questions having to do with deep and imponderable matters;" (2) "consist of a belief-system" that is "comprehensive in nature . . . as opposed to an isolated teaching;" or (3) are marked "by the presence of certain formal and external signs." Africa, 662 F.2d at 1032. Consequently, we conclude that Plaintiff has failed to

8

adequately allege that he has a sincerely held religious belief that could support a claim for relief under Title VII or the PHRA under any theory of liability. Thus, we conclude that Plaintiff has failed to state a cognizable claim based on religious discrimination in Count I or Count II, and Defendant's Motion is therefore granted insofar as it seeks dismissal of those Counts.

    B.    <u>Disability Discrimination</u>

Defendant moves to dismiss Count III of the Complaint on the grounds that Plaintiff has failed to state a claim for disability discrimination in violation of the ADA because he has failed to exhaust his administrative remedies as to that claim. "[B]efore filing an ADA claim in federal court," a plaintiff "must exhaust [his] administrative remedies." <u>Simko v. U.S. Steel Corp</u>, 992 F.3d 198, 204 (3d Cir. 2021) (citing <u>Churchill v. Star Enters.</u>, 183 F.3d 184, 190 (3d Cir. 1999); 42 U.S.C. §§ 12117(a), 2000e-5). "These pre-suit requirements, which include the step of filing a charge and receiving a right-to-sue letter from the EEOC, are 'essential parts of the statutory plan, designed to correct discrimination through administrative conciliation and persuasion if possible, rather than by formal court action.'" <u>Id.</u> at 206-07 (quoting <u>Ostapowicz v. Johnson Bronze Co.</u>, 541 F.2d 394, 398 (3d Cir. 1976)) (citation omitted). Thus, "[t]he exhaustion requirement . . . advances the remedial purposes of the ADA." <u>Id.</u> at 207.

Where a plaintiff obtains a right-to-sue letter for one charge of discrimination but later seeks to file a civil action for a different, additional claim, the court, upon a motion by the defendant, must determine "whether [the] later claim needs to be exhausted despite the filing of a previous [EEOC] charge." <u>Id.</u> at 207. In making this determination, the Third Circuit applies "a two-pronged inquiry into whether 'the acts alleged in the subsequent . . . suit are fairly within the scope of [1] the prior EEOC complaint, or [2] the investigation arising therefrom.'" <u>Id.</u> (alterations in original) (quoting <u>Waiters v. Parsons</u>, 729 F.2d 233, 237 (3d Cir. 1984)) (citation omitted).

Here, Defendant argues that Plaintiff has failed to exhaust his disability discrimination claim because (1) it was not included in his prior EEOC charge, and (2) "[t]here is no basis to conclude that the EEOC would have uncovered [Plaintiff's] unidentified disability through the course of its investigation into [his] claims of religious discrimination." (Def.'s Reply at 7.) Plaintiff concedes that he "selected only 'religion' as the basis for . . . his charge" of discrimination with the EEOC, but he argues that his disability claim is nonetheless exhausted because "it is reasonable to conclude that the investigation into Plaintiff's EEOC [charge] would have exposed the validity of his ADA disability discrimination claim on the basis of a perceived disability." (Pl.'s Mem. at 11, 13 (citation omitted).)

"[W]hen determining whether a claim fairly or reasonably falls within the investigation arising from a [prior EEOC] charge, courts consider (1) whether the claim arises from the same set of facts that support the original charge and (2) whether the claim advances the same theory of discrimination as the original charge." Simko, 992 F.3d at 209. Plaintiff's theory of disability discrimination is that Defendant terminated his employment because it perceived his unvaccinated status as a disability. This claim appears to arise from the same set of facts that supported Plaintiff's prior EEOC charge for religious discrimination, but it advances a distinct theory of discrimination. Where, as here, the complainant makes no mention of any real or perceived disability in a previously filed charge of religious discrimination with the EEOC, we cannot "fairly or reasonably" expect the EEOC to uncover such a theory of liability in its prior investigation. Id.; see, e.g., Williams v. East Orange Cmty. Charter Sch., 396 F. App'x 895, 897-98 (3d Cir. 2010) (holding that the plaintiff's ADA claim was not fairly within the scope of the EEOC investigation arising from the plaintiff's prior charge of discrimination on the basis of her race, religion, and age). Moreover, in his briefing and at oral argument, Plaintiff failed to identify any case to support

10

his position that his unvaccinated status may be a perceived disability pursuant to the ADA. We cannot "fairly or reasonably" expect the EEOC to foresee and investigate a claim that, based on Plaintiff's submissions and our own research, appears to be legally unsupportable. Simko, 992 F.3d at 209. Accordingly, we cannot conclude that Plaintiff's claim for disability discrimination was fairly or reasonably within the scope of his prior EEOC charge or the investigation arising therefrom. Id. at 207. Thus, we conclude that Plaintiff has failed to exhaust his disability discrimination claim in Count III by filing a charge of discrimination with the EEOC, and we therefore grant Defendant's Motion insofar as it seeks dismissal of that Count.

      C.      Nuremberg Code

Defendant moves to dismiss Count IV of the Complaint on the grounds that Plaintiff's claim for a violation of the Nuremberg Code is not cognizable as a matter of law. Plaintiff is not the first litigant to assert that his employer violated the Nuremberg Code by implementing mandatory COVID-19 precautions. See, e.g., Finkbeiner v. Geisinger Clinic, Civ. A. No. 21-1903, 2022 WL 3702004, at *3 n.24 (M.D. Pa. Aug. 26, 2022); Leitgeb v. Sark Wire Corp., Civ. A. No. 21-259, 2022 WL 18777380, at *9-10 (N.D. Ga. Sept. 21, 2022); Anderson v. United Airlines, Inc., 577 F. Supp. 3d 1324, 1334-35 (M.D. Fla. 2021); Bridges v. Houston Methodist Hosp., 543 F. Supp. 3d 525, 528 (S.D. Tex. 2021); Johnson v. Brown, 567 F. Supp. 3d 1230, 1248 (D. Or. 2021); McCutcheon v. Enlivant ES, LLC, Civ. A. No. 21-393, 2021 WL 5234787, at *3 (S.D.W.V. Nov. 9, 2021). However, none of those claims have survived the earliest stages of litigation, with some courts refusing to even analyze the "base analogies" between an employer's COVID-19 policies and "the forced medical experiments of the Nazi regime" addressed in the Nuremberg Code. Finkbeiner, 2022 WL 3702004, at *3 n.24 (citations omitted).

11

"[A]s other courts have held, Covid-19 vaccine mandates are simply not equivalent to the forced experimentation on concentration camp victims that led to the writing of the Nuremberg Code." Anderson, 577 F. Supp. 3d at 1335 (citations omitted); see also Bridges, 543 F. Supp. 3d at 528 ("Equating the injection requirement to medical experimentation in concentration camps is reprehensible."). Plaintiff does not allege that he was forced to participate in clinical trials for the COVID-19 vaccine or that he was forcibly injected with the vaccine while being physically held against his will. Anderson, 577 F. Supp. 3d at 1335 (quoting Johnson, 567 F. Supp. 3d at 1248). Instead, Plaintiff asserts a very different claim—"a challenge to a vaccine mandate . . . to take an FDA-authorized vaccine at the risk of losing [his] employment." Id. (quoting Johnson, 567 F. Supp. 3d at 1248). "This simply is nowhere near the same as Nazi doctors performing experiments on victims held against their will in concentration camps, as was the subject of a portion of the Nuremberg Trials." Id. (quoting Johnson, 567 F. Supp. 3d at 1248).

Moreover, Plaintiff simply cannot state a claim for a violation of the Nuremberg Code because the Code is not law, but rather "a set of principles that a panel of judges trying Nazi defendants at the Nuremberg Trials laid out as points for ethical medical experimentation." Id. (quotation omitted). The principals of the Nuremberg Code have been incorporated into federal law. Id. (citing Abdullahi v. Pfizer, Inc., 562 F.3d 163, 182 (2d Cir. 2009)). Therefore, if Plaintiff, as a "U.S. citizen filing suit against a U.S. company, had a valid claim based on the precepts of the Nuremberg Code, it is difficult to imagine a case in which the claim would not be actionable under domestic law." Id. Consequently, we conclude that Plaintiff has failed to state a claim for relief in Count IV, and we therefore grant Defendant's Motion to dismiss that Count.

In sum, we find that the Complaint fails to state a plausible claim of discrimination under Title VII, the PHRA, or the ADA. We further find that the Complaint fails to state a claim for a

violation of the Nuremberg Code. We therefore grant Defendant's Motion in its entirety and dismiss the Complaint for failure to state a claim upon which relief may be granted.

D.     Leave to Amend

Plaintiff has requested, however, that we grant him leave to amend his Complaint. Decisions on motions for leave to amend are committed to the sound discretion of the district court. Gay v. Petsock, 917 F.2d 768, 772 (3d Cir. 1990) (citations omitted). Nevertheless, the court must freely give leave to amend "[i]n the absence of any apparent or declared reason—such as . . . futility of amendment." Foman v. Davis, 371 U.S. 178, 182 (1962); see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008) ("[I]f a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment, unless such an amendment would be inequitable or futile." (citation omitted)). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000) (citing In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997)). In determining whether an amendment would be futile, the court "applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." Id. (citing Burlington, 114 F.3d at 1434) (additional citation omitted). Thus, "the district court may properly deny leave to amend where the amendment would not withstand a motion to dismiss." Centifanti v. Nix, 865 F.2d 1422, 1431 (3d Cir. 1989) (citing Massarsky v. Gen. Motors Corp., 706 F.2d 111, 125 (3d Cir. 1983)).

Here, based on the factual allegations contained in the Complaint, as well as Plaintiff's briefing and Plaintiff's counsel's representations at oral argument, we conclude that Plaintiff cannot state a plausible claim for disability discrimination in violation of the ADA because his perceived disability claim is unexhausted and appears to be legally insufficient. In addition, we conclude that Plaintiff's attempt to state a claim under the Nuremberg Code is unjustifiable and

baseless. Accordingly, we find that any amendment of Plaintiff's claims under the ADA and the Nuremberg Code would be futile and we therefore deny Plaintiff leave to amend those claims. Nevertheless, we are not convinced of the futility of the claims for religious discrimination in violation of Title VII and the PHRA because Plaintiff's counsel stated at oral argument that she could supplement the Complaint with factual allegations relating to Plaintiff's religious history. We therefore grant Plaintiff leave to amend the Complaint with respect to those two claims in Count I and II.

**IV.     CONCLUSION**

For the foregoing reasons, Defendant's Motion is granted in its entirety and Plaintiff is denied leave to amend the Complaint insofar as it asserts claims under the ADA and the Nuremberg Code. Plaintiff, however, may file an amended complaint curing the deficiencies in his Title VII and PHRA claims for religious discrimination. An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.
_____
John R. Padova, J.